MARTHA M. CHIRURG, Appellant, v. ABBIE S. AMES, Appellee.

**Trusts:** ACCOUNTING: ADMISSIBILITY OF TRUSTEE'S ACCOUNTS. In a proceeding for an accounting by a trustee his books of account are admissible, even though not kept in such a systematic manner as to render them admissible under the statute; but if he fails to keep proper accounts every intendment is against him, and he should be charged with items not properly accounted for.

**Accounting:** MONEY DUE BENEFICIARY: LIFE USE OF TRUSTEE. The defendant in an accounting should not be charged with a sum resulting from a sale of real estate, in which defendant has a life estate, since she is entitled to the use of the money for life; nor should she be charged with a note executed to plaintiff for the amount when the note is outstanding and not due.

**Same:** TRUST ESTATE: MANAGEMENT: EVIDENCE. Where defendant after rendering her account as plaintiff's guardian took charge of her daughter's (plaintiff) affairs, made requested expenditures in the matter of her education and living for a series of years, often rendering personal service and protesting against the daughter's extravagance, but nevertheless managed the estate so that it increased in value, the daughter, under all the circumstances disclosed, is held to be in no position to complain of the net result of the management, or to object to reasonable compensation for the services.

**Deeds:** CANCELLATION: EVIDENCE. To set aside a deed regular on its face, on the ground of fraud, the evidence must be clear and satisfactory. Evidence held insufficient to justify cancellation.

**Trusts:** ACCOUNTING. Absolute good faith and a strict accounting by a trustee is ordinarily required, but where the beneficiary is of full age and induces the very conduct of which he afterwards complains, is satisfied with the methods of the trustee while they are in progress, and interferes with the trustee and keeps part of the accounts, no such strict accounting is required as in ordinary cases.

*Appeals from Kossuth and Palo Alto District Courts.—*
HON. W. B. QUARTON, Judge.

WEDNESDAY, JUNE 10, 1908.

Two actions were brought by plaintiff against defendant, one in Kossuth and the other in Palo Alto county. The action in Kossuth county was for an accounting, and the one in Palo Alto was to cancel a deed, made by plaintiff to defendant, for a life estate in a certain eighty acres of land therein situated. The cases were tried together in the district court of Kossuth county, resulting in a decree dismissing the petition in each case. Plaintiff appeals.— *Affirmed.*

*Sullivan & McMahon* and *E. A. & W. H. Morling,* for appellant.

*Kelleher & O'Connor, W. S. Kenyon, J. J. Clark* and *Harrington & Dickinson,* for appellee.

DEEMER, J.— Plaintiff is the daughter of defendant, as a result of defendant's marriage to one Daniel J. Ames, who in his lifetime lived in the State of Illinois. Before her marriage to Ames defendant had been married to one Wright, by whom she had two children, John and Gertrude, and from whom she was divorced. She married Ames about the year 1877, and plaintiff was born April 10th, 1878. After her marriage to Ames she lived with him in Illinois, until his death, intestate, December 17, 1887. Upon his death defendant was appointed administratrix of his estate, and also guardian of the person and property of plaintiff, her daughter. In such representative capacities she received all the property of which her husband died seised, and in these relations, or as mother of the plaintiff, and with her (plaintiff's) consent, she has had charge thereof ever since. Having married one Chirurg, and made a

home for herself, plaintiff having been, as she says, unable to secure a proper settlement from defendant, brought these two suits, the one for an accounting, and the other to set aside a deed, made by plaintiff to defendant, of some Palo Alto land, executed April 29, 1896. As to certain matters the facts are not in dispute, and the only thing involved in the first case is the accounting. At the time of the death of Ames the family consisted of defendant and her three children. They lived together as such until plaintiff's marriage in October, 1905, for a part of the time at Rutland, Ill., where Ames was living at the time of his death. Thereafter the family moved to Normal, Ill., to secure educational advantages, returning to Rutland in the summers, until the fall of 1894 when they moved to Ottawa, Ill., where they resided until the summer of 1896, when they moved to Boston, Mass., which place had, at one time, been defendant's home. They lived in a rented house in Boston until the summer of 1902, when plaintiff purchased a residence in what is known as the "Brighton District," to which they immediately removed, and where they all lived until plaintiff's marriage. The children, John and Gertrude, were part of this family during all the time, save that for a year or two John was in Chicago, and recently Gertrude has been away from home part of the time teaching. When Ames died he owned considerable real estate in the State of Illinois, eighty acres of land in Humboldt county, Iowa, and forty acres of land in Nemaha county, Kan. All of this real estate has now been disposed of, save the Kansas land. He also died possessed of personal property, which, at the time of distribution in 1892, amounted to $12,725.94. Plaintiff and her mother were the sole and only heirs at law and next of kin of Daniel J. Ames; plaintiff being entitled to two-thirds of all the property left by her father, save the Kansas land, and defendant being entitled to a life estate and a fee in the remainder of the real estate, and one-third, absolutely, of the personalty.

Defendant's accounts as administratrix were finally settled in July of the year 1902, and at that time it was found that she had in her hands, belonging to plaintiff, $7,858.57. As guardian of plaintiff, she inventoried the Illinois real estate, fixing a value on part of it at $5,400, but omitting to place a valuation on some of it. She inventoried the Iowa land, and valued it at $1,000, subject to her rights as widow. She also inventoried the Kansas real estate, but placed no value upon it. She also stated that Ames had in cash at the time of his death, $1,300. She charged herself in this inventory, as administratrix, with insurance, on a house burned, at $1,200, with cash notes and rentals, $4,-332.25, and with various notes, inventoried at $10,874. Reports were made from time to time, and finally, when plaintiff became of age she filed her final report as guardian, and upon plaintiff's signing a certificate that she had examined the account, and had found the items correct, and that the balance due her was $8,164.22, the receipt of which she acknowledged, the guardian was finally discharged. As a matter of fact plaintiff received no part of this sum, but, with her consent, she then being a mere school girl, defendant took charge of the money, and has since used, expended, and kept the same. At that time it seems that defendant opened a new account with plaintiff, and charged herself with the sum of $7,858.57, the amount shown to be in her hands, at the time of her settlement as administratrix, in July of the year 1902. There is no attempt to go back of the settlements made by defendant as administratrix or as guardian; but she is asked to account for the amount she should and did receive after her accounts were closed as guardian.

Defendant kept two books, showing or pretending to show her receipts and disbursements, and these have been introduced in evidence, with oral explanations and comments. Plaintiff says that these books should not have been received, because not

1. TRUSTS: accounting: admissibility of trustees' accounts.

so kept as to be admissible under the statute. There is no merit in this contention. True, the books were not kept with any degree of system, nor do they meet the requirements of the statute; but it is not necessary, in an accounting proceeding of this kind, that the trustee keep such books as that they would be admissible under the statute. True, it is the duty of the trustee to keep books and vouchers, and to render accounts when demanded, but the kind of books and accounts to be kept and rendered the law does not fix. Much, of course, depends upon the circumstances of each particular case, and all subject to the thought that the burden is upon the trustee to make a proper and satisfactory accounting of the funds which came into her hands. If she does not do so, then every intendment is against her, and she should be charged with all items not properly accounted for.

It should be said in this connection that plaintiff paid little or no attention to her money matters. As a rule she trusted her affairs to defendant, although she often made drafts upon her own funds, and, generally speaking, her mother followed plaintiff's wishes as to expenditures. Plaintiff was given an excellent education. She was taken through high school, given a four-year course in Wellesley, from which college she graduated, and a two-year post graduate course at Radcliffe. She was an excellent student, and earned a scholarship at a school in Athens. The mother was very indulgent with plaintiff, was proud of her achievements, and did everything that a mother could to give her an education. and make her happy. She made many of plaintiff's gowns, took her to resorts in the summer, and in many ways economized in order that plaintiff might gratify her desires. As was to be expected, a suitor turned up in time, and when things began to be serious, defendant took a violent dislike to him, and when the engagement was announced, she did everything in her power to prevent the marriage. She claims to have looked up the antecedents of

plaintiff's present husband before the marriage, and found them very bad, that he was a bogus "Russian nobleman," and a base deceiver, both of men and women. She gave the matter publicity, and in every way endeavored to stop the marriage, but all to no purpose. As usual, when matters are so long deferred, the mother's opposition made her child the more determined, and plaintiff married the man to whom defendant had taken such a violent dislike, and is now living with him as husband, and so far as the record shows, happily. As might reasonably be apprehended after a marriage under such circumstances, plaintiff or her husband or both concluded that defendant should make an immediate accounting of plaintiff's money and property to the last farthing, and after several attempts at peaceful settlement out of court, these actions were brought in this State, the first being aided by attachment, and the parties came into this jurisdiction, although all of them reside at or near Boston, and are asking the courts of this State to settle their difficulties.

We have already spoken of the books and accounts kept by the defendant, and of their admissibility in evidence. It should also be noted that defendant furnished at the trial a statement showing her receipts and expenditures for and on plaintiff's behalf, covering the entire period during which she has had plaintiff's money and property, made up, as she claims, from her books and other memoranda, which statement shows a balance in her favor of $1,001.61. There was also introduced in evidence what is known as an "auditor's account," being a summary of plaintiff's account, made up by an auditor in Boston, who went over defendant's books and papers at her request, and stated an account between the parties purporting to eliminate all errors therein. This report showed an indebtedness to defendant from plaintiff of $612.46. A great number of checks issued by plaintiff upon a bank, in which an account was kept in her name, are also in evidence. These books, statements, accounts and

checks, with such oral explanations as either party had to offer, constitute the record in the accounting case. Appellant has presented the case upon the theory that these books, statements and accounts are contradictory, many of the items therein erroneous, and that many false charges and entries were made, that defendant failed to charge herself with many items with which she should have been charged, and claims credit for many items to which she is not entitled, and that, with these items eliminated, it will be found that defendant is indebted to plaintiff in many thousands of dollars. It is very difficult upon appeal to make a satisfactory accounting from the printed page. An item may seem doubtful upon such an examination which might easily be explained were the witness before us, and which may not have been doubtful to the trial court or to counsel when the case was being tried. Again, with aid of counsel and the books and items before us, agreements might be had as to various items, which it is very difficult to trace from statement to books and from books to the auditor's account. It is unfortunate that this court has no power to appoint an expert referee or master to examine the books and accounts, and to state an account between the parties as shown by the books. Having no such power, we have done the best we can, and have gone over all these matters many times, in an attempt to make a proper accounting, and to verify our figures after results have been obtained.

Taking the defendant's statement as a basis for our figures, which counsel have also done, we have gone through it item by item, and have found several errors on both sides of this account, some in favor of one party, and some in favor of the other, but generally errors made against the plaintiff. This statement shows that plaintiff was indebted to defendant in the sum of $1,001.61, and it is manifest that, unless we find errors amounting to more than this sum, the decree in the accounting case should be affirmed. Moreover, should we take the auditor's statement, which was made

up from the same books, and which purported to eliminate the errors therein, we would start with the assumption that plaintiff was indebted to defendant in the sum of $612.46.

We have had considerable difficulty with the Bay State Bank account, which was kept in plaintiff's name, and against which she drew all of the checks that were issued, save one. As a rule, these checks, which were issued by plaintiff herself, do not seem to have been entered on defendant's account, although in a few instances they were. On the other hand, defendant made an account upon her books of money deposited by her in the bank in plaintiff's name, these entries appearing upon the debit side of the account. It is manifest that if defendant received this money for plaintiff's account, and deposited it in the bank to plaintiff's credit, she should have credit for the deposits, provided, of course, she charged herself with the income which went into the bank. If she did not charge herself with this money, and plaintiff is not seeking to hold her therefor, and defendant is claiming no credits for checks issued against the same, then the bank account should not be considered one way or the other, except where there is some duplication of credits claimed by defendant. It is somewhat difficult to know what to do with this bank account. Defendant has attempted to charge herself with all items received by her on plaintiff's behalf, and plaintiff is attempting to charge her therewith. On the other hand, plaintiff, while seeking to hold defendant for all items received, makes no allowance for money checked out by her, save as she attempted to charge her mother therewith, and even now claims the small balance, less than $100, now in the bank. As a basis for the settlement, we have taken the statement made by the defendant, as counsel have done, and our conclusion is that there are net errors therein in defendant's favor, amounting to something like $780, but this still leaves plaintiff indebted in a sum amounting to more than $200.

It is useless to set out the figures, as it would simply in-

cumber the printed page. It should be said in this connection that there is a remainder of something like $700 in

2. ACCOUNTING: money due beneficiary: life use of trustee.    cash, in which defendant has a life estate, resulting from the sale of some Illinois property, which is not accounted for, and with which defendant is not charged on this accounting. There is no authority of law for charging the defendant with this remainder now. She is entitled to the use thereof during life. Moreover, a note was made by defendant to plaintiff covering this amount, which plaintiff admits she received, and which she says is not paid. Defendant admits that the note is unpaid, and says that it is still outstanding. It has either been lost or destroyed, but this, of course, does not destroy the obligation. The note is not due, and should not be charged on this accounting. Nor will this decree constitute an adjudication thereof. The main debit items of which plaintiff complains relate to expenses claimed by defendant in managing plaintiff's estate, the care of a horse, board bills, household expenses, etc.

We are satisfied that defendant is entitled to the compensation claimed. She has not only handled plaintiff's money, but judiciously invested the same. She not only

3. SAME: trust estates: management: evidence.    looked after plaintiff's interest as a trustee, but she did more than most mothers would have done on her behalf. She made her dresses, looked after her welfare, attended to her wants, and endeavored to gratify her whims and her wishes. In many ways she was a slave to her daughter. The board bill was not extravagant. Plaintiff desired to make something of a display of her wealth. She demanded and promised to pay for more and better things than her mother thought their circumstances would justify. Plaintiff insisted that the mother keep a saddle horse, which was used almost exclusively by plaintiff, and was taken, at her request, to various resorts and watering places. The household expenses with which she is charged she agreed to pay, in order to make a better

display. Until her marriage plaintiff seemed to have had little concern over her money matters. She induced her mother to increase expenses against the mother's better judgment, and promised to meet them herself. After all these have been met, plaintiff, as a result of her mother's management, has not only had an excellent schooling, with many of the luxuries of life, but she is better off financially than when she arrived at age, and turned all her financial affairs over to her mother, a rather unusual circumstance, in view of the conditions disclosed by the record. We are impressed with the notion that while, had these parties been strangers, a somewhat different result might have been reached, plaintiff has no cause to complain of the mother's management, or of the net results thereof.

The Palo Alto case has reference to a deed, made by plaintiff to defendant, for a life interest in one-half of a certain tract of land in Palo Alto county. It is claimed this

4. DEEDS: cancellation: evidence. deed was obtained through fraud and mistake. The deed is fair on its face, and plaintiff admits having executed and delivered the same to defendant, although she says that she did not know what was in it, or what it was, and that she signed the same at defendant's request. Plaintiff must make out her case by clear and satisfactory evidence. This she has not done. She admits her signature to the deed. She was of full age when she signed it, and, as the record shows, is a woman far above the average in education and intelligence. We believe the matter was fully explained to her, not only by her mother, but by counsel versed in the law. She either knew all the circumstances, or she was very negligent in not knowing them. No reason appears for disturbing the deed.

The case, as a whole, is a most peculiar one, and it may be said in closing that plaintiff apparently had absolute

5. TRUSTS: accounting. confidence in her mother, and in the way she was handling her property, until the marriage to which defendant objected. She was satisfied with the

mother's management and with the expenditures made on her behalf, save that they were not as great, perhaps, as she thought were warranted, until her marriage, and then for the first time she began to scrutinize her mother's previous dealings and accounts. Now she asks the most searching investigation and careful scrutiny of the accounts. Having led the mother into her extravagant notions, insisted upon a somewhat lavish expenditure of money, and asked no accounting at any time, she is not now in a position to demand a scientific and accurate accounting from the mother. In general she knew of the expenditures made on her behalf at the time they were made, and she never made any protest until just before the bringing of this suit. The expenditures were many, most of them for small items, and it was impossible at the time of trial for the defendant to have any distinct recollection of the different items. Not only this, but plaintiff assumed to take charge of part of her affairs. The money placed in the bank to her credit was almost entirely checked out by her, and this tended to confuse matters, so that it seems almost impossible to make an accurate accounting. We do not intend to modify in any respect the duties ordinarily owing by a trustee to his *cestui que trust*. Absolute good faith and a strict accounting is ordinarily required. But where the *cestui* is of full age, and induces the very conduct of which he complains, is satisfied with the methods adopted while they are progressing, interferes himself with the duties of the trustee, and keeps part of the accounts himself, no such strictness is required as in the ordinary case. We cannot hope to have made an absolutely accurate accounting. That would be impossible under the record before us. Neither a referee nor a master, no matter what his knowledge or experience, could hope to do more than reach approximate results. That we have done to the best of our ability. It appears, too, that an auditor went over defendant's accounts and made a statement, which is in the record. The trial court also went over them,

and found nothing due the plaintiff. We have again gone over them, and, while we find the errors heretofore indicated, they are not such as to change the general result. We find nothing of which plaintiff may justly complain.

The decrees in each case must be, and they are, *affirmed.*