ALICE E. PARSONS HEINTZ, Appellee, v. ELLA PARSONS et al., Appellants.

No. 46160.

May 4, 1943.

Rehearing Denied September 27, 1943.

986

J. L. Mowry and C. H. Van Law, both of Marshalltown, for appellants.

William L. Hassett, of Des Moines, and R. A. Rockhill, of Marshalltown, for appellee.

SMITH, J.— ██ Defendant-appellant Ella Parsons is the mother of all the other parties. Her husband, George Parsons, died August 13, 1920, owning real and personal property. His will gave her the use of all his property for her life or until remarriage. Paragraph 2 provided:

"In case my said wife shall remain my widow until her death then I direct that upon her death my estate shall be divided among my children, share and share alike. If any one of my children shall have died leaving issue his share shall go to such issue; but if any one shall have died without issue, his share shall be divided equally among those who survive."

The decedent left real estate, as well as personal property, but we find no occasion for special reference to it in this opinion. The case pertains to matters of accounting and the real estate left by decedent can only be incidentally involved, if at all.

The personal property consisted almost wholly of cash, government bonds, and bank certificates of deposit. The executors were the widow and the older son, defendant-appellant Alva Parsons. They filed an inventory which listed no cash or bank deposits and only $5,122.27 of government bonds and war stamps. But when they closed the estate in December 1921, their final report showed "receipts" totaling $26,928.30, consisting of mixed items of income and principal, without adequate explanation in the report as to source and character, none of which were identifiable as representing the items of the inventory except by assuming those items had been cashed and converted into certificates of deposit. The last item of "receipts," however, is for the collection of a United States Bond coupon, suggesting that the estate still owned one bond, at least.

The "disbursements" balanced the receipts but the report was equally confused on that side of the account, the items being

mixed in character and apparently including administration expense, advancements or loans to remaindermen, investments, and items of expense of management, including taxes, repairs, etc.

The report entirely failed to show how much, if any, cash and what securities were turned over to the life tenant as constituting the principal or corpus of the personal estate which she was to hold in trust for her own use as life tenant and for the remaindermen at her death. There was no receipt or inventory constituting a starting point for an accounting either now or hereafter.

The inventory showed an indebtedness of defendant-appellant Alva Parsons in the sum of $1,540, and of Chester Wolf and W. H. Wolf, husband and father-in-law respectively of defendant-appellant Gladys Parsons Wolf, $1,156.75. The final report lists loans or advancements to them of $1,800 and $1,650 respectively, made by the executors almost immediately after the estate was opened, and a similar advancement to defendant-appellant Leland Parsons, $440. There was no judicial authorization for these distributions or loans, or for the widow's allowance for living expenses shown in the report. The record here shows further subsequent advancements or loans by the life tenant to remaindermen.

Plaintiff-appellee claims the estate was prematurely closed, without any order for notice of hearing on final report, without any such notice being given, and without any guardian ad litem being appointed for plaintiff-appellee, then a minor of fifteen years, or for her brother Leland, eighteen years old. However, the order of discharge contained this recital:

"* * * the Court having inspected the Proof of Posting Notices in three public places as provided by the order of this Court, said notices being posted by the Clerk of this Court in accordance with law, and the Court finding that the said notice is a good and sufficient notice * * *."

On the trial below it was shown that a month or two before he died, decedent received by gift or contract from his aunt, Ann Smith, certificates of deposit and other securities aggregating $17,785.59. These were not shown in the inventory but

presumably were represented in some way among the "receipts" shown in the final report.

There was litigation in 1927 and 1928 over this transfer, in which litigation the aunt sought recovery of the property and charged fraud, inducing the making of the transfer. Defendant-appellant Ella Parsons defended that suit. The result was a consent decree requiring her to pay costs and plaintiff's attorney's fees, and an additional sum of $1,500 to Ann Smith's executrix, who had meantime been substituted as plaintiff. Mrs. Parsons in the present case claims that these items and also her own attorney's fees and expenses are chargeable against the corpus of the property held by her as life tenant; also the payments of $50 per month made by her under said contract from date of her husband's death to date of settlement, aggregating $4,850. Under the contract these monthly payments were to be made during Ann Smith's life.

Whatever the corpus of the estate, it was presumably turned over to the life tenant (though the final report does not so state) without security, identification, or accounting.

Defendant-appellants claim that on the record here they have made a sufficient accounting of the corpus of the estate and that no further proceedings are necessary. The court, however, ordered the life tenant to account by a date fixed, held the estate was prematurely closed and reopened it, and retained jurisdiction of the subject matter for further proceedings.

I. The first question we meet here goes to the rights and duties of a life tenant of personal property consisting of money or its equivalent. The case of Scott v. Scott, 137 Iowa 239, 114 N. W. 881, 23 L. R. A., N. S., 716, 126 Am. St. Rep. 277, contains a discussion of the whole subject of the duties of holders of life estates in personal property. We need not review or repeat it here. It establishes quite clearly the right of the court, in its discretion, even to require the life tenant to give security for the protection of the remaindermen.

Every authority we have examined, including Ruling Case Law, heavily relied on by appellants, agrees that the life tenant of such property should be required to furnish an inventory of the property received and an acknowledgment that it is held by the recipient for life only, with remainder over. See 17 R. C. L.,

Life Estates, 626, 627, section 17; 33 Am Jur., Life Estates, Remainders, etc., 710, section 224; 31 C. J. S., Estates, 152, 154, section 134b. Each one cites the Scott case, supra, among the authorities supporting the proposition.

The case of Nelson v. Horsford, 201 Iowa 918, 921, 208 N. W. 341, 342, 45 A. L. R. 515, is exactly in point. That case was decided upon demurrer. This court said:

"The demurrer admits that the appellee received the estate from herself as executrix, and holds it under the terms of the will, and that the records of her administration and disposition of the estate to herself do not disclose the amount so received. The prayer of the petition asks, among other things, that the defendant be required to make full accounting as to all moneys and property received by her in the estate of Horsford. To require her to account to this extent is not an interference with her right under the will to the use and enjoyment of the estate as life tenant, or whatever right she may have to encroach upon the principal. It is no interference with the trust reposed in her by the testator in bestowing upon her the right to the use and enjoyment of the property during her life or widowhood. It is no more than the disclosure she was required by law to make, as executrix. As the recipient of the estate from herself as executrix, she cannot take shelter behind her own failure as executrix to make the reports required of her."

There can be no doubt of the soundness of the rule of these cases.

We are further convinced that the life tenant, in a proper case, may be required later to report without waiting until the termination of the life tenancy. There is no charge against the life tenant here of any dishonesty or bad faith or even of negligence or lack of business ability and thrift. However, the funds from her husband's estate which she holds as life tenant have apparently been commingled with her own. Part, at least, has been invested in real estate taken in her own name. There have been funds advanced or loaned to remaindermen whose interests are either contingent or subject to a possibility of being divested.

Where the life tenant is given possession of the fund he becomes a trustee or quasi trustee for the benefit of the remainderman. 21 C. J., Estates, 941, section 73. This is the theory upon which courts are held to have authority to require the life tenant to give security or to place the property in the hands of a separate trustee.

We are not required here to define the limits or extent of the power of control retained by the court over such a trust. It is sufficient to say we think the record abundantly supports the decision of the trial court requiring an accounting of the corpus or principal of the fund, showing an inventory of the original items received by her as life tenant, and the present form in which the fund is invested, as well as intervening transactions which reveal how the fund has been handled.

II. We come now to the question of forum. In which proceeding shall the accounting be had? The Scott case, supra, was apparently in probate, and the proceedings were instituted before the estate was closed. The specific relief asked for by applicants was that the life tenant be required to give security before taking transfer of the funds from herself as executrix. The court granted the relief asked.

The case of Nelson v. Horsford, supra, was in equity. The defendant had been executrix of her husband's will which created the life tenancy and had, as life tenant, taken over the property without adequate accounting. The prayer was "for an accounting by the defendant as to all moneys and property received by her in the estate * * * and a full disclosure as to the money and property now in her possession as life tenant which were derived directly or indirectly from such estate." 201 Iowa, at page 919, page 342 of 208 N. W.

In neither of these cases was involved any question of reopening the estate. We have sought authority, statutory or otherwise, upon the question of reopening an estate under conditions similar to those presented here. Plaintiff-appellee invokes the relief upon the proposition that the records and files of the estate reveal no order for notice of hearing on the final report, no notice actually given, and no appointment of guardian ad litem for herself, then a minor. But the order of discharge

affirmatively recites the existence of all these things except the appointment of guardian ad litem.

Plaintiff-appellee cites Code of Iowa, 1939, section 12073, but we think it must be read in connection with sections 12049 and 12051. Section 12073 does affirmatively require notice or waiver thereof. But section 12051 apparently imposes a three-months' limitation upon the right to reopen, even where the estate has been settled *without notice* to an aggrieved interested party. Section 12049 expressly provides for equitable relief "on showing such grounds as will justify the interference of the court." It has been expressly held that the three-months' limitation does not apply to an equity suit brought under this section 12049. Arnold v. Spates, 65 Iowa 570, 22 N. W. 680.

But even a right to reopen on equitable grounds may be lost by laches or barred by limitation. This order of discharge stood unchallenged from December 26, 1921, till the commencement of these proceedings, nearly nineteen years later. We think no equitable grounds are shown that would justify going back of that order for the purpose of impeaching the accounting.

This does not mean that the life tenant may not be required to account as already held in Division I hereof. It does mean the accounting must be in equity. The life tenant will be required to furnish all information necessary to such accounting, even to the extent of explaining the items of the final report. But this is not for the purpose of questioning or correcting said items. Some reported disbursements may have been unauthorized and some receipts included not strictly belonging to the estate. We think these matters are beyond correction at this time.

The purpose of the accounting, in its relation to the final report, is to enable the court to determine what property actually came into Mrs. Parsons' hands as life tenant under paragraph 1 of her husband's will. The final report falls far short of furnishing the necessary information. To demand that it be given now while facts are still within the knowledge and memories of the proper parties is the right of plaintiff-appellee as a remainderman in the protection of her own interests. And to require that it be given now is within the power of the court of equity.

992

■ III. The claims urged in argument by defendant-appellants make it certain that in the accounting there will arise problems growing out of the Ann Smith transaction and subsequent litigation and settlement. No claim against the estate was ever filed on her behalf but the final report shows the executors paid her the $50 per month for fourteen months of the period of administration. Under our holding here this cannot now be questioned.

But this record shows the life tenant continued the payments after the estate was closed and until the death of Ann Smith. Are these later payments chargeable against the corpus of the estate or were they payable by the life tenant out of income as would be interest on encumbrances upon the property? See 21 C. J., Estates, 958, section 94.

We find no precedents to guide us here. Had a claim been filed in the estate and duly allowed, the court could not have compelled payment and acceptance of a lump sum representing the then present worth of the estimated total payments based on Ann Smith's expectancy. It would have had to require the setting aside of a sufficient fund, the income of which would have been available for the monthly payments. That would have deferred the life tenant's use of the income from such fund until the death of Ann Smith.

As already suggested, the only analogy that comes to mind is the rule that requires the life tenant to keep down interest on encumbrances. See 33 Am. Jur., Life Estates, Remainders, etc., 995, section 461; 31 C. J. S., Estates, 63, section 48. True, the contract with Ann Smith for monthly payments to her for life was not an encumbrance on the property, but there is a similarity in principle between the two situations. See, also, Cooper v. Barton, 208 Iowa 447, 226 N. W. 70, as bearing slightly on the question.

Mrs. Parsons, as life tenant, had the income of the property from the time the estate was closed. She paid the monthly stipends to Ann Smith. We do not believe these payments can be charged by her against the corpus in accounting with the remaindermen. They would not have diminished the estate if the claim had been regularly allowed and the claimant protected

by the court. The life tenant cannot be held to fare better by reason of having herself paid the installments voluntarily without the question having been submitted to the court.

IV. What has been said under Division III hereof still leaves undisposed of the question of accounting for the expenses of the Ann Smith litigation and the lump-sum settlement in that case. The case was started in an effort to annul the contract under which George Parsons acquired the funds from his aunt and to reclaim the property received by him thereunder.

It was an attack upon a large part of the very corpus of the estate. In defending it the life tenant was defending not only her own interests but those of the remaindermen as well. It seems clear these items are chargeable. Not to have defended it would have been a failure to perform her plain duty as trustee for all parties. In making the settlement which is represented by the consent decree it must be assumed she acted in good faith. All these items, including her own attorney's fees, are credits which the life tenant may use in making her accounting.

From what has been said, it follows that the decree in the equity case is affirmed and the case remanded for further proceedings in accordance with this opinion. The order reopening the estate of George Parsons, deceased, is reversed.—Affirmed in part; reversed in part.

All JUSTICES concur.