In the Matter of the Judicial Settlement of the Account of Proceedings of WILLIAM H. FROST, as Sole Surviving Administrator with the Will Annexed, etc., of JESSE OWEN, Deceased.

WILLIAM H. FROST, as Administrator, Appellant; EMILY B. OWEN, Respondent.

Third Department, July 2, 1917.

Executors and administrators — will giving widow life estate with power to dispose of personalty for her use and maintenance — when executor not liable to account for income used for support and maintenance of family, including widow — evidence establishing consent of widow — widow not entitled to custody of corpus of estate.

Where a testator gave all his property to his wife for life " with the power of disposing of the personalty with a view to her personal use and maintenance " with remainder to his daughter who was made the sole executrix and who after her death was succeeded by her husband, neither of whom was asked to account, the widow, after living as one of the family of her daughter for several years and acquiescing in the use of her income for the payment of household and living expenses of the family, cannot, after the termination of the family relationship, compel the husband of her daughter to account for said income, the evidence clearly establishing her consent to such use thereof.

Third Department, July, 1917.    [Vol. 179.

In order to safeguard properly the corpus of the estate, the money and securities belonging thereto should be delivered to the successor of the administrator, with authority to invest such money and securities and pay the income to the widow, and such portion of the principal as the surrogate may direct " with a view to her personal use and maintenance.".

APPEAL by William H. Frost, as administrator with the will annexed, from a decree of the Surrogate's Court of the county of Chemung, entered in the office of said Surrogate's Court on the 19th day of October, 1916, judicially settling his accounts herein.

*Babcock & Gregg* [*W. W. Gregg* of counsel], for the appellant.

*Stanchfield, Lovell, Falck & Sayles* [*Henry B. Collin* of counsel], for the respondent.

COCHRANE, J.:

Jessé Owen died in the year 1900, leaving a will containing the following provision: "After all my lawful debts are paid and discharged, I give, bequeath, and devise to my wife, Emily B. Owen, all of my real and personal estate, that I may die possessed of, during her lifetime, with the power of disposing of the personalty with a view to her personal use and maintenance; with remainder over in fee to my daughter, Minnie W. Frost, to her and her heirs forever." The daughter of the testator, Mrs. Frost, the wife of the appellant, was named as sole executrix of the will. She qualified and continued in the performance of her duties as such executrix until her death in the year 1903. She never had any accounting. After her death, and in the year 1903, the appellant, Mr. Frost, and Samuel Thorp were appointed administrators with the will annexed. Mr. Thorp appears not to have taken any active part in the administration of the estate and died in the year 1910. Neither administrator with the will annexed ever had any accounting until the present proceeding was instituted in the year 1916 on the petition of Emily B. Owen, the widow of the testator. After the death of Mr. Owen his widow took up her residence in the home of Mr. Frost, consisting of himself, his wife, and son and daughter. Within a few months after the death of Mr. Owen they moved into a residence owned by Mrs. Owen,

she constituting one of the family. This condition existed after the death of Mrs. Frost in 1903, and until after the marriage of Mr. Frost's daughter in 1915. Then she went to live on a farm which during all the years mentioned had apparently been owned by her son and herself. Mrs. Owen some time before the death of Mrs. Frost conveyed to her the property where she and the Frost family were residing in the city of Elmira, reserving, however, a life estate therein.

In his account the appellant charges himself with $13,438.87 as the principal of the estate, and $9,516.65 as interest thereon and credits himself with payments of $16,730.43. These payments were mainly for household and living expenses of the family of Mr. Frost including Mrs. Owen during all the years when he was administering the estate and are sought to be justified on the theory that Mrs. Owen expressly authorized him to pay the household and family expenses out of her income. It also appears that she during the same period received as her share of the income of the said farm $4,930.01 which was turned over to Mr. Frost and mingled with the income of the estate and was all used for the common purpose of supporting the family and paying their living expenses. Produce in kind was likewise supplied from the farm from time to time for the use of the family

The surrogate sustained the objections to the family living expenses and after taking into consideration what had been received by Mr. Frost both from the income of the estate and from the income of the farm charged him with a balance of income on hand of $6,261.66. This balance of income the decree directs the appellant to pay over to Mrs. Owen. It also directs him to turn over to her the principal of the estate consisting of cash, securities, furniture, and other property, and to deliver to her a deed of a life estate in certain real property to which he as administrator had taken title under mortgages held by the estate.

There is no serious contention that all of the income belonging to Mrs. Owen which came into the hands of Mr. Frost has been used by him in the manner claimed for the expenses of the family and for their support and maintenance. The question before the surrogate was whether such expendi-

tures had been authorized by Mrs. Owen. After an examination of the record we are convinced that such authority
has been established so far as the income is concerned, by
a clear preponderance of the evidence. Mrs. Frost during
her administration of the estate had used the income thereof
for the support and maintenance of the family with the full
knowledge and acquiescence of Mrs. Owen. This is clearly
established and there is no contradiction thereof. It was
undisputed by Mrs. Owen herself as a witness. She never
required Mrs. Frost to account and there is no indication
that she ever expected her to do so. She was apparently
content to live with her daughter and to allow her income
to be used by her daughter for the benefit of her daughter's
family. Mr. Frost testifies that after the death of his wife,
Mrs. Owen told him to conduct the affairs in the same manner
as her daughter had done and to pay the household expenses
out of her income in the same manner as her daughter had
done before her death. The daughter of Mr. Frost testifies
to the same thing. They do not testify that Mrs. Owen
authorized the expenditure of the principal for any purpose.
Mrs. Owen's testimony is not positive or convincing. She
was eighty-six years old at the time of the trial and so infirm
as not to be able to attend court, her testimony being taken
at the farm where she was living. Her statements were
somewhat vague and indirect and do not squarely meet the
positive testimony of Mr. Frost and his daughter. But
beyond all this are the circumstances and probabilities of
the case which seem to us to forcibly substantiate the claim
of the appellant. Mrs. Owen clearly knew the disposition
made of her income by her daughter during her lifetime.
After the death of the daughter the family continued to live
in the same manner and style and with no change of relationship. She permitted her daughter's husband to receive her
personal income from her farm knowing that he must have
been using it as well as the income from the estate for the
support of the family as her daughter had done. It is
unreasonable to suppose that with her relations to his family
unbroken she expected any different disposition to be made
of her income or that the family was being supported from
any other source after her daughter's death than before.

Mr. Frost was engaged in no business and had very little individual income and it is quite apparent that Mrs. Owen must have known during all of these intervening years that she was practically supporting the family. She made no remonstrance. She does not claim to have ever asked Mr. Frost for a statement or explanation but she was apparently willing to live as one of his family and to devote her income to its support in return for the advantages which his home offered to her until after the marriage of his daughter to whom she seems to have been deeply devoted and upon the departure of whom from the family a change in her relations with Mr. Frost occurred and she took up her residence on the farm owned by her son and herself. Having consented to the disposition of her funds during the years when she was a member of the Frost family for its maintenance as we are convinced she did, it is now too late. after her relationship with that family has terminated to seek a different disposition thereof. The contention of the appellant that the income of the estate has been disposed of according to the express directions. of Mrs. Owen is sustained and the decree should be modified so as not to require the payment of any income.

The decree is also criticised because it directs that the corpus of the estate be turned over to Mrs. Owen unconditionally. In a case like this where the beneficiary is something more than a life tenant. and has power to use in his discretion some portion of the principal for his support he is as a general rule entitled to the custody of the fund without security. (*Matter of McDougall,* 141 N. Y. 21, 26; *Matter of Grant,* 40 N. Y. St. Repr. 944; *Matter of Ungrich,* 48 App. Div. 594.) But the authorities likewise recognize the principle that provision may be made for the adequate protection of the corpus of the estate in any case when the circumstances disclose a menace to the rights of the remainderman. (*Matter of Ungrich,* 48 App. Div. 594, 597; *Getman* v. *McMahon,* 30 Hun, 531; *Smith* v. *Van Ostrand,* 64 N. Y. 278, 286.) In this case a proper safeguarding of the fund requires in the discretion of the court that it should not be delivered to respondent. No injustice will result to any one, but an injustice may be obviated by such precaution. The decree should, therefore, be further modified so as to direct that the money

and securities belonging to the corpus of the estate shall be delivered to the successor of the appellant who shall hold and invest such money and securities and pay the income thereof to the respondent and such portion of the principal as the surrogate may direct " with a view to her personal use and maintenance " as contemplated by the will.

The decree should be modified in accordance with this opinion and as so modified affirmed, with costs to both parties payable out of the estate. The court disapproves the ninth, tenth, fourteenth and fifteenth findings of fact as made by the surrogate and finds that all of the income of the estate received by the appellant has been disbursed by him with the authority and consent of the respondent.

All concurred.

Decree modified in accordance with opinion, and as so modified unanimously affirmed, with costs to both parties payable out of the estate. The court disapproves the ninth, tenth, fourteenth and fifteenth findings of fact as made by the surrogate, and finds that all of the income of the estate received by the appellant has been disbursed by him with the authority and consent of the respondent.