14120

LONG v. LEA *ET AL.*

(181 S. E., 6)

*Mr. George W. Beckett,* for appellant.

*Messrs. Thomas & Thomas,* for respondent, Eva Lea, cite: *Rights of life tenant:* 1 Strob. Eq., 52; 17 R. C. L., 627.

August 7, 1935.

The opinion of the Court as delivered by MR. JUSTICE FISHBURNE.

Captain Peter L. Lea died on November 27, 1922, leaving his last will and testament, which was duly admitted to probate in Beaufort County, the place of his residence. On April 5, 1923, on the petition of his widow, the respondent Eva Lea, she, together with Hampton K. Lea and James M. Lea, named in the will as executrix and executors, qualified as such, and entered upon the discharge of their duties.

Thereafter, in March, 1924, Hampton K. Lea and James M. Lea made their final returns as executors, which were approved by the Probate Court, and under the order of said Court they were discharged. On September 12, 1927, Eva Lea made her final return, applied to the Probate Court for Beaufort County for her discharge as executrix, and on November 10, 1927, an order was issued by the Probate Court discharging her as executrix.

Under the terms of the will of Peter L. Lea, after leaving a home and other property to his daughter, the appellant, Lilla L. Long, and a home to his wife, the respondent Eva Lea, for her life, with remainder to her two children, all of

the personal estate of the testator, amounting to approximately $15,000.00, was left to his wife, the said Eva Lea, during her life, she to use the income from same for the support of herself and her two children, and after her death it was provided that the personal estate be divided among testator's three children, share and share alike.

Peter L. Lea was married twice. He left surviving him his widow, Eva Lea, and their two children, Eva Hampton Lea and Peter L. Lea, Jr., and his daughter by his first marriage, Lilla L. Long, the appellant herein. The three children above named are the sole remaindermen who are to share and share alike under the will.

This action is brought by Lilla L. Long alone, the other two children having been made parties-defendant.

The fifth and eighth paragraphs of the will, which are pertinent to the issues raised in this action, are as follows:

"Fifth: All the residue and remainder of my property I desire to stay intact during the life of my dear wife, Eva, and that she use the income from same or so much thereof as may be necessary for the support and comfort of my said dear wife and children and therefore with this end in view I hereby give and bequeath unto my dear wife Eva and during her life all of said property with full power to use all the income from same or as much as may be necessary for the use and support and comfort of herself and her children."

"Eighth: All the rest and residue of my property after the death of my said wife I desire to go to and be the property of all my children share and share alike absolutely."

This action was brought by the plaintiff on the equity side of the Court to require the life tenant, Eva Lea, to account for the corpus of the estate; the plaintiff alleging waste, mismanagement, and the sale and conversion of a portion of the corpus to her own use, and asking for the appointment of a trustee for said estate, or the giving of a bond by the life tenant for the protection of the remain-

dermen, or at least for the protection of the petitioning remaindermen, it being alleged that the corpus of the life estate is in grave danger of loss and destruction through the fraud and mismanagement of the life tenant.

The answer denied the material allegations of the complaint, and alleged, among other things, that in her annual and final returns made to the Probate Court of Beaufort County, as executrix of the estate, she misunderstood the instructions of her legal adviser and her co-executors, and, being unfamiliar with bookkeeping, she mingled her private income derived from property individually owned by her with that coming into her hands as executrix, and she asked the Court to review her returns as executrix and allow her to eliminate from said returns those items representing her own money which were erroneously listed, with the view of ascertaining what she is properly chargeable with as executrix and life tenant of said estate, and what she has properly paid out for said estate. By her answer the defendant-respondent joined in that part of the prayer of the complaint which asked for an accounting of her actings and doings as executrix and life tenant.

By an order of the Circuit Court the cause was referred to a special referee to take the testimony, said order providing "that the said Eva Lea be allowed to make a full accounting and show all monies and assets belonging to said estate that have come into her hands either as executrix or life tenant, and all disbursements made by her in connection with said estate, and the amount of assets and property of said estate which is or should be now in her possession as life tenant; and that said referee do report his findings to this Court."

The special master, after an exhaustive hearing, reported an itemized account, disallowing certain items charged against the estate, and showing that the life tenant had in her custody and control personalty, consisting of stocks, bonds, cash, and securities aggregating $15,622.31 belong-

ing to the corpus of the estate. He allowed as charges against the estate items aggregating $6,140.00, leaving a balance to be accounted for of $9,482.31. He further found that the evidence showed no fraud, but that "a most negligent and ignorant handling of the estate monies has occurred by the life tenant," and he concluded his report with the recommendation that the life tenant should be required to give a good and sufficient bond for the preservation of the estate. The plaintiff did not except to the report of the special master.

From the report of the master, the defendant (respondent here Eva Lea) appealed to the Circuit Court on several grounds relative to items disallowed in her accounting. The Court sustained the defendant upon items totaling $2,395.50, holding that this amount should be credited to her account and charged against the estate. Deducting these figures from $9,482.31, it leaves to be accounted for by Mrs. Lea the sum of $7,087.31. The record shows that she exhibited to the referee stocks, bonds, credits, and securities amounting to $7,444.00, or an excess of $356.69. The only reasonable conclusion to be drawn from the consideration of the foregoing calculation is that Mrs. Lea, due to the intermingling of her personal funds with the funds of the estate, paid debts of the estate with her personal funds amounting to the excess shown, to wit, $356.69. No appeal has been taken from this holding of the circuit decree by the appellant.

The final ground of appeal by the life tenant, Eva Lea, was from the decision of the master finding and recommending that a bond should be required of her for the preservation of the estate for the remaindermen. This ground was sustained by his Honor, the Circuit Judge, and the special master's report was reversed as to this requirement. It is from the ruling of his Honor, Judge Greene, in refusing to require that the life tenant furnish a bond to preserve the estate for the remaindermen, and from this ruling alone, that this appeal is being taken.

On this point, the Circuit Judge held: "After a careful perusal of the testimony, the Court fails to find that there is any testimony whatever of any fraud or dishonest dealing on the part of the executrix and life tenant in her management of said estate; but, on the contrary she has exhibited to the referee all of the assets of said estate with which she is properly chargeable, except the few hundred dollars in cash belonging to the estate, and has shown that she has herself properly charged with that and there is no evidence whatever to show that she has not this amount of cash on hand; and she has further shown that she has ample property in her own right, in the way of real estate and real estate mortgages, within the jurisdiction of this Court, for the protection of the remaindermen; and therefore the Court cannot see any necessity for requiring her to furnish any bond for the protection of said remaindermen. The testator, himself, made no provision for a bond, and apparently had every confidence in the ability and integrity of the said executrix and life tenant to properly handle the estate."

The appellant comes into this Court upon six exceptions, imputing error to the Circuit Judge for failure to require bond of the life tenant to protect the rights of the remaindermen. All of these exceptions will be considered together.

It has been many years snce the Court has had occasion to pass upon issues similar to the issue raised here. There are no recent decisions. We must look to adjudcations of an earlier day.

In the early English cases it was the practice to exact from the tenant for life security for the protection of the remaindermen. This security is still required in exceptional circumstances, but unless the remainderman can show some necessity for exacting security, the only remedy which he now has is to require the tenant to make an inventory which shall show the property which he received and to which the remainderman will become entitled upon the termination of the life estate. *Bentley v. Long,* 1 Strob. Eq., 43, 47 Am.

Dec., 523, per Caldwell, Ch.; *Smith v. Daniel,* 2 McCord, Eq., 143, 16 Am. Dec., 641, per Nott, J.

In *Gardner v. Harden,* 2 McCord, Eq., 32, certain slaves, the property held by the life tenant, were removed or permitted to be removed from the state by the life tenant, and the bond was required. The circuit decree, which was affirmed on appeal, held in part: "The only question then which remains is, whether the complainants are entitled to any, and what security, for the protection of their interests? It is usual in such cases, where there does not exist cordial har·mony and confidence between the parties to require a schedule of the property in question, to be signed by the tenant for life and delivered to the remaindermen as evidence of their rights. And where there is no reasonable ground of apprehension for ill intentions, that is sufficient. In case, however, of real danger, the protection furnished must be increased."

In *McLemore v. Blocker,* Harp. Eq., 272, we find the following, per De Saussure, Ch.: "As to the security required of the widow, for the forthcoming of the property at the termination of her life estate, I am not willing to order that: it will be an imputation upon her in relation to her own child, and that without any allegation or proof of misconduct. But it is right that she should sign a schedule of what comes to her hands for her life, and that is ordered to be done accordingly."

The general rule is to be found in 17 R. C. L., 627, where it is stated: "Where, however, the testator has directed that the life tenant have possession of the funds, the matter of exacting security is regarded as discretionary with the Court, and if the testator has not seen fit to require such security the Court will not require it unless it is shown that there is danger of loss, either because of the irresponsibility of the life tenant, his removal of the estate beyond the jursdiction of the Court, or some similar reason, since the requirement of security might impose on the life tenant a burden which he could not dis-

charge, and thus the intention of the testator would be defeated."

To the same effect, see 21 Corpus Juris, §§ 103, 104, at page 965:

"Where a life estate is given in personal property the tenant on taking possession may be required to file an inventory thereof, with acknowledgment that it is held for life only, with title in the remainderman; but in the absence of a showing of danger of loss or injury this is the only protection to which the remainderman is entitled.

"A tenant for life of personal property is usually entitled to its possession without giving security for the forthcoming of the property at the termination of the life estate, security being required only where there is a showing of actual danger of loss or injury. It cannot be demanded as a matter of absolute right, unless it is so provided by statute. It is, however, within the discretion of the Court to require security, unless it appears from the proper construction of the instrument creating the estate that it was the intention of the grantor that the life tenant should be put into possession without security. And even where the will shows an intention that the possession of the property should be intrusted to the life tenant the Court may require security if it appears necessary for the protection of the rights of the remanderman. Security should be required whenever it is shown that the property is in actual danger of loss or injury, or where it has been removed from the state, or there is actual danger of its being removed; or where the life tenant is a nonresident, or insolvent."

In equity cases the appellant has the burden of showing that the findings of the appellate Court are against the preponderance of the evidence. *Boatwright v. Crosby,* 83 S. C., 190, 65 S. E., 174; *Tindal v. Sublett,* 82 S. C., 199, 63 S. E., 960.

We have given the most assiduous study to the testimony in this case, and have examined with care all the documentary evidence, and we are con-

strained to hold that the Circuit Judge committed no error in his refusal to require a bond of Eva Lea, the life tenant. We are unable to find in this record the slightest taint of fraud on her part, and while the complaint and appellant's exceptions are rife with charges of fraud, mismanagement, conversion, and misappropriation, we have been unable to find support for these charges in the evidence. The respondent is now living in Beaufort, and has lived there all her married life; she has never removed, or attempted to remove, any of the assets of the estate beyond the jurisdiction of the Court and has satisfied the special master and the Circuit Court that she has on hand all of the assets of the estate with which she is properly chargeable. The appellant has made no sufficient or satisfactory showing of danger of loss, waste, or destruction.

In addition to this, the record shows that Mrs. Lea, the life tenant, is not insolvent, but owns in her own right ample property in Charleston County and in Beaufort County to protect the estate and the remaindermen from any loss. This property includes real estate in Beaufort County, and bonds and notes secured by mortgages of real estate in Beaufort and Charleston counties.

We have examined with critical attention the returns, reports, and inventories submitted by Eva Lea, as executrix and life tenant, to the Probate Court and to the special referee, including hundreds of items showing receipts and disbursements over a long period of years, and in our opinion she has handled the affairs of life estate in good faith, honestly, without waste, and wthout entailing any loss upon the remaindermen.

Her annual and final returns to the Probate Court did show a mingling of her personal funds with the funds of the life tenant, but her explanation of these items makes it perfectly clear that she had no ulterior purpose in so doing, and that the remaindermen suffered no preju-

dice whatever therefrom. As a result of her testimony the stocks, bonds, and securities held by her as life tenant stand separate and apart, and are now so listed, and there can be no possible confusion hereafter as to which of these items are owned by her personally and individually on the one hand, and which are held by her as life tenant on the other hand.

All exceptions have been considered, and are overruled.

It is the judgment of this Court that the judgment of the Circuit Court stand affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.