IN RE ESTATE OF AUSTIN ROREM (E. T. and MARK ROREM, executors).

MYRTA ROREM, MARK ROREM, as executor and individually, et al., appellants, v. E. T. ROREM, as executor and individually, et al., appellees.

No. 48521.

(Reported in 66 N.W.2d 292)

SEPTEMBER 21, 1954.

John Barry, of LaJolla, California, and Lundy, Butler & Lundy, of Eldora, for appellants.

Gerald O. Blake, of Jewell, and Phelan, Karr & Karr, of Webster City, for E. T. Rorem, as executor and individually, appellee.

GARFIELD, C. J.—This is a probate matter involving several questions. The applications, answers and other papers which state the issues fill one hundred eighty pages of the rec-

ord. The principal contest is over the attempt of one executor, Mark Rorem, to charge his coexecutor, Elmer T. Rorem, individually with fees for the former's attorneys and over Mark's resistance to the allowance of fees to Elmer and his attorney. After a hearing the trial court allowed part of the fees claimed by Mark for his attorneys and by Elmer and his attorney but refused to charge Elmer with Mark's attorney fees. Mark as executor and remainderman, his mother (life tenant), a brother and sister (two other remaindermen), have appealed.

Austin Rorem died August 15, 1949, leaving his widow, Myrta, four sons (Elmer, Gaylord, Mark and Dale), and a daughter (Lydia). Elmer and Gaylord are sons by a prior marriage. Austin left 320 acres of land in Hamilton County and other property. His will provides Myrta shall have the use and income from his estate for life and the right to use such part if any of the corpus as shall be reasonably necessary for her comfortable care, support and maintenance. Whatever properties may remain in the estate at the time of Myrta's death shall vest in such heirs of Austin's body as may then survive. The will was admitted to probate. Elmer and Mark (half brothers), the nominees, were made executors.

In June 1951 Gaylord, a son by the first marriage, commenced a contest of the will in Hardin County where the will was probated, alleging mental incapacity and undue influence by Myrta, and an equity action in three counts in Hamilton County where the land lies claiming Gaylord and his brother Elmer were equitable owners of the land and seeking in count 3 an accounting for funds in Austin's hands claimed to belong to Gaylord and Elmer. The will contest was dismissed with prejudice four days before trial was to commence. The equity action was tried, relief was denied and we affirmed the decree. Rorem v. Rorem, 244 Iowa 980, 59 N.W.2d 210.

Elmer as coexecutor employed Mr. G. O. Blake of Jewell as his attorney. Mark with his mother, Dale and Lydia employed as their attorneys Lundy, Butler & Lundy of Eldora and John Barry of LaJolla, California. Gaylord's attorneys in the will contest and equity action were Phelan, Karr & Karr of Webster City. Mr. Blake was also an attorney for Gaylord in the equity action.

In the present action Mark asks that fees of $13,500 be allowed his attorneys from estate funds and Elmer be directed to reimburse the estate therefor on the ground Elmer maliciously conspired with Gaylord to loot the estate by bringing the will contest and the equity action with full knowledge there was no merit therein. Elmer in his final report as an executor asks that he be paid $1175 fees and his attorney, Mr. Blake, be paid fees of $5300 as claimed by him. Mark, his mother, Dale and Lydia resist allowance of fees to Elmer on substantially the grounds urged in support of the claim he be charged the $13,500 for Mark's attorneys. They also object to allowance of fees to Mr. Blake on the grounds he represented interests adverse to the estate in the equity action, well knowing it was not meritorious, and he orally agreed to probate the estate for $200. Other issues will be referred to later.

The trial court allowed fees of $8833.33 for Mark's attorneys, but, as stated, refused to charge Elmer with any part thereof. Elmer was allowed $750 and Mr. Blake $1500. Later mention will be made of decisions on other questions.

I. Mark and the other appellants first assign as error the court's failure to allow the full $13,500 claimed for Mark's attorneys.

It is important to keep in mind this is a probate action not reviewable de novo here. The trial court's findings have the force and effect of a jury verdict and are conclusive upon us if supported by substantial evidence. Rule 334, Rules of Civil Procedure; In re Estate of Lorenz, 244 Iowa 338, 339, 56 N.W.2d 884, 885, 886, and citations; In re Estate of Pierce, 245 Iowa 22, 29, 60 N.W.2d 894, 899. Since this controversy involves fact questions to a considerable extent it is apparent the familiar rule just stated places a rather heavy burden upon appellants.

In re Estate of Myers, 238 Iowa 1103, 1106, 1107, 29 N.W.2d 426, 427, 428, reviews a probate order allowing fees to an administrator's attorney. After considering earlier precedents on the subject these rules are stated and citations for each of them given. We have frequently said such a proceeding as this is reviewable on assignment of errors and not de novo in this court. We will interfere with a probate order regarding

attorney fees that lacks adequate or sufficient support in the evidence. The amount allowed by the probate court will be reduced by us if -clearly excessive. It would seem to follow that such an allowance will be increased by us if manifestly inadequate, since we should treat claimants for attorney fees as fairly as we do objectors to such claims. We have frequently held the trial court has considerable discretion in the allowance of compensation to administrators and their attorneys. But the exercise of such discretion must be reasonable. The burden of showing the services rendered and the value thereof rests upon the claimant. See also In re Trust of Larkins, 243 Iowa 322, 326, 327, 51 N.W.2d 396, 398, which cites the Myers case.

■ We find insufficient basis for increasing the trial court's allowance for Mark's attorneys. The widow first consulted Lundy, Butler & Lundy about a month after testator died. When Mr. Barry was first consulted does not appear. Apparently he lived in Oklahoma, where some of Myrta's side of the family reside, before moving to California. Myrta, her two sons and a daughter evidently employed the Lundy firm and Mr. Barry to look after their interests in the estate which, including realty, was of the approximate value of $100,000.

Myrta, Mark, Dale and Lydia made separate written contracts with the Lundy firm and Mr. Barry dated October 8, 1952. This was three years and one month after the will was probated. The equity action had then been tried and decided in the district court and was pending here upon appeal. The will contest had been dismissed March 19, 1952. The fees claimed for the Lundy firm and Mr. Barry are for their services in these two cases. The contract with Lundy, Butler & Lundy states the original employment was at $15 an hour and charges then exceeded $4600 but Myrta, her sons and daughter agreed to pay the firm $5000 for all their services, including such applications as the firm should deem proper to charge Elmer or the estate with all legal expense.

The contract with Mr. Barry fixes $5500 as the amount to be paid him plus $2000 for defending the appeal in the equity action. Barry was to pay the Lundy firm half this last amount.

There is evidence the Lundy firm put in altogether 568 hours pursuant to their employment by Myrta et al. Its state-

ment says briefing was done on 48 different days. Some of this was long after we decided the equity case and appears to have been in connection with the controversy now before us. The showing as to what Mr. Barry did is fragmentary and unsatisfactory. It consists largely of this narrative appended to the statement submitted by the Lundy firm: John Barry participated in two or more conferences in the office, was present and participated in each of the trials, prepared the first draft of the brief in the supreme court and furnished citations of authorities. The statement in appellants' brief that Mr. Barry participated in the will contest and equity action trials is obviously incorrect since there was no trial of the will contest.

Mr. Leming, an attorney from Hampton, expressed the opinion the services of the Lundy firm and Mr. Barry were of the value of between $15,000 and $20,000. This was on the basis of $20 an hour for all time spent. As we have indicated, there is no showing of the time spent by Mr. Barry. Then too the Lundy firm had agreed to work for $15 an hour. The difference between $15 and $20 an hour for the 568 hours the Lundy firm says it put in is $2840.

The court was not bound to accept Mr. Leming's opinion as a verity. Obviously it purports to be only an approximate estimate. Van Gorden v. Lunt, 234 Iowa 832, 840, 13 N.W.2d 341, 345, and citations; State ex rel. Weede v. Bechtel, 244 Iowa 785, 834, 56 N.W.2d 173, 200, and citations.

Nor, as appellants conceded upon the trial, was the court required to allow the amounts they had contracted to pay their attorneys. The attorneys were entitled only to a "just and reasonable" allowance. Section 638.25, Code, 1954; In re Estate of Munger (Ladd, J.), 168 Iowa 372, 150 N.W. 447, Ann. Cas. 1917B 213; In re Estate of Murphy, 209 Iowa 679, 684, 228 N.W. 658; Glynn v. Cascade State Bank, 227 Iowa 932, 937, 289 N.W. 722. See also State ex rel. Weede v. Bechtel, supra, 244 Iowa 785, 833, 56 N.W.2d 173, 199; In re Schield's Estate, Mo., 250 S.W.2d 151, 156.

The trial court found Lundy, Butler & Lundy and Mr. Barry were entitled to $3500 for preparing to defend the will contest (dismissed before trial), and their services in the equity

action, insofar as they benefited the estate, were reasonably worth $5333.33. As stated, the total amount charged to the estate was $8833.33. As we have indicated, this allowance is based on findings of fact which have substantial support in evidence. It does not appear any erroneous rule of law of which appellants may complain was applied in disposing of this issue.

The court held count 1 of the equity action was at least in part a contest between the individual claimants to the land, a portion of the whole estate, in which the executors as such were not interested. However, count 3 of the equity action (see Rorem v. Rorem, supra, 244 Iowa 980, 59 N.W.2d 210) in which Gaylord asked an accounting for funds claimed to belong to Elmer and him was held to be like any other claim against the estate which, along with count 2, the executors were interested in resisting.

We are not persuaded it was an abuse of discretion or otherwise erroneous to hold the individual litigants should bear part of the attorney fees in the equity action on the theory it was at least in part primarily a contest between them. See In re Estate of Jenkins, 245 Iowa 939, 65 N.W.2d 92, and citations; In re Estate of Leighton, 210 Iowa 913, 919–923, 224 N.W. 543; In re Estate of Colburn (Ladd, C. J.), 186 Iowa 590, 607, 173 N.W. 35; In re Estate of Officer, 122 Iowa 553, 98 N.W. 314; annotation 79 A.L.R. 521. See also 33 C.J.S., Executors and Administrators, section 225, page 1215 et seq.

We have no occasion to consider whether the allowance against the estate was excessive since neither Elmer nor Gaylord has appealed and appellants make no such contention. Nor are we called upon to consider whether there was any necessity to employ an attorney to assist the Lundy firm who lived 2000 miles from Hardin and Hamilton Counties.

II. We find no error in the court's refusal to charge Elmer with the fees allowed Lundy, Butler & Lundy and Mr. Barry. Appellants' argument on this point is in effect that Elmer acted in bad faith in conspiring with Gaylord to commence the will contest and equity action, knowing they were without merit, and the expense of defending them is a loss to the estate which Elmer should bear. The rule of law relied upon

is that an executor is liable for losses resulting from his bad faith. 33 C. J. S., Executors and Administrators, section 247. Other related rules are also asserted. We need not discuss them because of our conclusion upon this phase of the case.

The trial court found Gaylord started the will contest and equity action "without instigation by or consultation with Elmer. * * * the court is clear Elmer neither fomented the lawsuits nor gave Gaylord any aid or comfort whatever in promoting either of them. * * * Indeed Elmer unsuccessfully tried to prevent them." The conclusions of law state "There is absolutely no basis for tying the lawyers' fees of Mark et al. to Elmer. * * * The most that can be said is that Elmer did little actively to defend the litigation. But this caused no loss. Had he defended it he would be asking for the fees claimants now ask."

There is substantial evidence to support the above findings. It is true much of it comes from Elmer as a witness. But the court had a right to believe Elmer. Evidence, such as the letter, Exhibit 20, on which much reliance is placed, tending to show the equity action or will contest was without merit is insufficient to charge Elmer with the fees of attorneys for Mark et al. unless, as appellants claim, Elmer promoted the litigation.

It is true there are some circumstances that cast suspicion upon Elmer, such as his paying Gaylord half the printing costs in this court in the equity action. The conclusion is justified, however, this was without prearrangement and was an act of generosity for which Elmer was not obligated. The trial court considered this and other circumstances in making his findings. There is insufficient basis for us to interfere.

III. The trial court held the fees allowed the executors and their attorneys should be paid from the corpus of the estate and since the personalty is inadequate to satisfy the debts and charges a sufficient portion of the land should be mortgaged or sold for that purpose by Mark, the remaining executor. (See section 635.23, Code, 1954.) (Elmer tendered his resignation as executor in his final report.) The court also held the estate should remain open during the widow's life with authority to Mark as executor to possess the personalty, pay his mother the income and such portion of the corpus if any as may be necessary for her support. He was required to account annually to the

court and obtain its authority before invading the corpus of the realty for Myrta's support.

Appellants argue it was error not to grant Myrta the right to sell or mortgage the realty to make the amount of her attorney fees in defending the will contest and equity action—it is said the will confers such right upon her. Complaint is also made of the order keeping the estate open. It is said Myrta is entitled to possess the personalty and to sell or mortgage the realty herself without court order whenever *she* determines it necessary for her comfortable care, support and maintenance.

Just why Myrta wants to sell or mortgage the realty to make the amount of her attorney fees rather than have her son Mark as executor sell or mortgage it to satisfy all debts and charges, including her attorney fees, as the court ordered and section 635.23 contemplates, is not apparent. Nor is it evident that this part of the judgment is prejudicial to the widow. Both Myrta and Mark have the same attorneys who will doubtless handle the matter for the most part since mother and son live in Oklahoma.

In any event we think the court properly ordered the executor to sell or mortgage the land. It is his duty to satisfy debts and charges and the estate is not settled until this is done. It would seem unwise and to involve unnecessary expense and duplication of effort for Myrta to sell or mortgage land to raise her attorney fees and for Mark also to sell or mortgage to satisfy other claims and charges, even if such piecemeal procedure were permissible. However, our statutes and decisions contemplate sale or mortgage of realty of an estate only after the full amount of debts and charges has been ascertained and for the purpose of making a sum sufficient to pay all of them. Code section 635.23; Soppe v. Soppe, 232 Iowa 1293, 1297, 8 N.W.2d 243, 245; In re Estate of Spicer, 203 Iowa 393, 395, 212 N.W. 689; Estate of Rabbett v. Connolly, 153 Iowa 607, 617, 133 N.W. 1060.

The will does not indicate the testator intended the widow, at least during the settlement of the estate, to sell or mortgage realty to make the amount of a single charge such as her attorney fees. We find no error in the court's failure to grant such relief.

Nor are we persuaded it was error, under the circumstances here, to permit Mark as executor to possess any personalty there may be, pay his mother the income and such portion of the corpus as may be necessary for her support and obtain court authority before invading the corpus of the realty for such support.

We do not understand any considerable amount of personalty will be left in the estate after payment of debts and charges. The court found a full accounting had been made of the disposition of the personal assets and they are inadequate to satisfy claims and charges. This is not challenged. Realty may be sold or mortgaged only to pay debts for the payment of which the personal estate is inadequate. Section 635.23; In re Estate of Pitt, 153 Iowa 269, 272, 133 N.W. 660, and citations; Estate of Rabbett v. Connolly, supra, 153 Iowa 607, 617, 133 N.W. 1060. See also Soppe v. Soppe, supra, 232 Iowa 1293, 1297, 8 N.W.2d 243, 245. We may assume substantially all the personal estate has been, or will be, before realty is mortgaged or sold, used to satisfy debts and charges.

It appears Mark owes the estate a past-due note of $4500 (the court's findings erroneously say it does not appear whether this debt is due). Dale also owes a note for $7500 due sometime in 1954. Mark was ordered to collect these notes when due. The order that the executor have possession of the personalty may have been intended to apply only to these notes or the proceeds thereof. The point we make is that the widow is not being deprived of the possession of much if any personalty after payment of debts and charges.

Aside from what we have just said, we are not persuaded it was an abuse of discretion not to deliver possession of the personalty to Myrta. It does not appear what it consists of other than the notes of Mark and Dale or the proceeds thereof. We do not know whether it is money or other assets. As stated, Myrta has only a life estate in the personalty with remainder to the surviving heirs of the testator's body. The personalty was bequeathed in general terms, not by description or in specie.

Myrta lives most of the time in Oklahoma. Presumably any assets delivered to her would be located there. She is elderly— she and Austin were married sixty years ago. Apparently she

is without business experience or capacity. There is strife and ill feeling between her side of the family and Elmer and Gaylord, two of the five remaindermen if Myrta were to die now. Theoretically some of the remaindermen may yet be unborn. Myrta would be inclined to be lenient toward her two sons who owe the estate substantial sums.

Under these and other circumstances the trial court might properly have required the life tenant to give reasonable security for the protection of the remaindermen before she would be entitled to possess the personalty. Scott v. Scott (Ladd, C. J.), 137 Iowa 239, 114 N.W. 881, 23 L.R.A., N.S., 716, 126 Am. St. Rep. 277; Heintz v. Parsons, 233 Iowa 984, 988, 9 N.W.2d 355, 357; In re McDougall, 141 N.Y. 21, 35 N.E. 961; Long v. Lea, 177 S.C. 231, 181 S.E. 6, 101 A.L.R. 266; 3 Woerner American Law of Administration, section 456, page 1558; 31 C.J.S., Estates, section 134c, pages 155–158.

The method of protecting the remaindermen employed by the trial court seems to be used less frequently than the requirement of security from the life tenant but there is respectable authority for it. Marvick v. Donhowe, 191 Iowa 214, 218, 182 N.W. 182, recognizes the propriety of continuing the executor as trustee to protect remainder interests in personalty bequeathed to the widow for life or until remarriage. See also in support of the trial court's judgment on this point Hetfield v. Fowler, 60 Ill. 45, cited with approval in Scott v. Scott, supra, at page 241 of 137 Iowa; Smith v. Field, 98 N.J.Eq. 532, 131 A. 521; Ott v. Tewksbury, 75 N.J.Eq. 4, 7, 71 A. 302; In re Frost, 179 App. Div. 431, 165 N.Y.S. 980, 983; 3 Woerner American Law of Administration, section 456, page 1558; 31 C.J.S., Estates, section 134a, pages 153, 154, which states:

"* * * where there is a general bequest for life, usually the property should be held * * * by the executor or trustee and the interest or income paid to the life tenant * * *, the principal being kept for the remainderman, unless the will shows a contrary intention on the part of testator. * * *

"Effect of right to encroach on principal. * * * in the case of a residuary bequest of personal property with right of the life beneficiary to use the income and to consume such portion

of the principal as he shall need, it has been held that the executor is entitled to hold the fund * * *."

No complaint seems to be made because of the fact Mark is directed to possess the assets as executor rather than as trustee.

Appellants' argument challenges the requirement that court authority be obtained before invading the corpus of the realty for Myrta's support. The principal contention at this point is that Myrta's judgment is final, if exercised in good faith, as to whether it is necessary for her support to invade the corpus of the realty. Hamilton v. Hamilton, 149 Iowa 321, 128 N.W. 380; In re Estate of Worman, 231 Iowa 1351, 4 N.W.2d 373, and some other precedents are cited.

The argument is broader than the assignments of error considered in this division. We think the assigned errors are answered by what we have said. However, we are not disposed to hold it was reversible error to require court authority before invading the corpus of the realty. Under any view of the power to invade the corpus the will grants Myrta, her judgment is subject to judicial review at least on the question of her good faith. Lovrien v. Fitzgerald, 242 Iowa 1258, 49 N.W.2d 845; Watkins v. Dean, 243 Iowa 599, 52 N.W.2d 498.

The power vested in the widow by the wills in the Lovrien and Watkins cases was broader than in the Rorem will. Yet Lovrien v. Fitzgerald affirms a requirement of the trial court that it approve any allowance from the corpus of the estate. At page 1269 of 242 Iowa the opinion states: "If this [income] is insufficient for her proper needs, and when she has exhausted the sum now available to her as the proceeds of past income, she may properly make application for an allowance from the corpus of the estate." Watkins v. Dean, supra, approves Lovrien v. Fitzgerald. This part of the court's decision here seems to be based on these recent pronouncements. See also In re Estate of Ullrich, 189 Iowa 868, 873, 874, 179 N.W. 176; In re Frost, supra, 179 App. Div. 431, 165 N.Y.S. 980, 983.

IV. Appellants complain of the allowances of $1500 to Mr. Blake, attorney for Elmer as executor, and $750 to Elmer.

One ground of complaint against the allowance to Blake is that he orally agreed with Elmer to accept $200. There is substantial evidence this sum was to be paid merely for the prelimi-

nary work of probating the will and preparing the inventory. Apparently the court found this is the fact. There is insufficient basis for us to reduce the fees of Mr. Blake to $200.

The main objection to an allowance to Blake grows out of his appearance as cocounsel with Mr. Karr's firm for Gaylord in the equity action. This is said to have been a representation of an interest adverse to the estate because of which Blake should be denied any compensation. As previously indicated, the main complaint against any allowance to Elmer is that he conspired with Gaylord to commence the equity action with knowledge it lacked merit.

It appears Elmer, the oldest son, was more familiar with his father's business than his brothers were. Elmer lives in Iowa, the others in Oklahoma or Texas. Elmer, a banker, seems to have done most of the nonlegal work of settling the estate. The court found "Elmer has carried on the administration of the estate and has done a good job with minor exceptions. He has filed his final report which is true and correct in all particulars save one, * * *. Alone he has performed nearly all the executors' ordinary work and little more needs to be done." The one particular just referred to is the payment of $1295 of income taxes he should not have paid. It is not intimated the payment was not made in good faith. The court refused to credit him with this payment but charged him with it.

It was stipulated the reasonable value of Elmer's services was $1175 but the propriety of paying him because of his claimed adverse interest was reserved. In June 1951, Mark wrote his mother, brothers and sister Elmer should have $25 per month during his handling of the estate. The court found Elmer's services reasonably worth $1000—Blake's $2000. These amounts, however, were reduced to $750 and $1500 respectively because Elmer did not resign after Gaylord brought the equity action and Blake appeared for Gaylord therein.

As explained in Division II hereof, the court found Elmer did not foment the equity suit but tried to avert it and that he caused no loss to the estate. Substantial evidence supports these findings. There is therefore no room for application of the rule appellants urge that fomenting vexations and unneces-

1140

sary litigation resulting in waste of estate funds is a ground for refusing compensation to an executor.

It is perhaps true Elmer should have resigned as executor after Gaylord brought the equity action in which Elmer's financial interest was with Gaylord. But his failure to resign did not necessarily deprive him of the right to any compensation. At most Elmer committed a breach of trust in not resigning.

Restatement, Trusts, section 243, states: "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation." Comment c to section 243 says these factors are to be considered: whether the trustee acted in good faith, whether the breach of trust was intentional or negligent or without fault, whether the breach related to the management of the whole trust or only part of it, whether the breach occasioned loss, and whether the trustee's services were of value to the trust.

We find no abuse of discretion in the court's failure to deny all compensation to Elmer upon the ground urged by appellants. See as tending to support our conclusion In re Estate of Healy, 137 Cal. 474, 70 P. 455.

The rule of law upon which appellants rely in resisting any allowance to Blake is that an attorney is not permitted to represent adverse interests growing out of the same transaction and where he does so he cannot recover for his services unless he acted with consent of the parties after a full disclosure of the facts. See 7 C. J. S., Attorney and Client, section 167b, pages 1024, 1025; 5 Am. Jur., Attorneys at Law, section 170; Fraser v. Crounse, M. C. A., D. C., 56 A.2d 54; Moffett Bros. Partnership Estate v. Moffett, 345 Mo. 741, 137 S.W.2d 507; W. C. Turnbow Petroleum Corp. v. Fulton, Tex. Civ. App., 199 S.W.2d 263. See also Whitcomb v. Collier, 133 Iowa 303, 310, 110 N. W. 836.

Mr. Blake's testimony in justification of his appearance as cocounsel for Gaylord in the equity action is that after reading the decisions he thought were applicable and preparing a brief on the subject he reached the good faith opinion the controversy was between the individual heirs in which the executors as such

were not interested. Therefore Blake says he felt he was not representing an interest adverse to the executors. As stated in Division I, the court held the action was at least in part between individual claimants to the land and we have approved the holding.

If Mr. Blake was in fact representing an adverse interest without consent of the parties by appearing for Gaylord in the equity action his good faith or honesty in so doing does not entitle him to compensation. Fraser v. Crounse, supra, and citations; In re Pfiffner's Guardianship, Mo. App., 194 S.W.2d 233, 236; 7 C. J. S., Attorney and Client, section 167b, page 1024; 5 Am. Jur., Attorneys at Law, section 64.

Whether an attorney for an executor may act for one of the heirs in a proceeding involving property of the estate depends upon the circumstances of the particular case. Jones v. Lamont, 118 Cal. 499, 50 P. 766, 767, 62 Am. St. Rep. 251; Logan v. Logan, 97 Ind. App. 209, 180 N. E. 32, 34. Among the circumstances here is the fact appellants apparently never considered Mr. Blake was attorney for any of them in the settlement of this estate—from the beginning they were represented by attorneys of their own choice.

We are cited to no decisions upon comparable facts which support a denial of all compensation to Mr. Blake because of his appearance as cocounsel for Gaylord in the equity action. The precedents we have found are against appellants on this branch of the case. Under generally similar circumstances it has been held not to be a violation of professional duty for an attorney for an executor to appear for one of the heirs in a controversy with the other heirs such as the equity action brought by Gaylord. In re Estate of Healy, supra, 137 Cal. 474, 70 P. 455, 456; McCabe v. Healy, 138 Cal. 81, 70 P. 1008; Logan v. Logan, supra, 97 Ind. App. 209, 180 N. E. 32, 34. See also In re Schield's Estate, supra, Mo., 250 S.W.2d 151, 156; Grauberger v. Light, 127 Cal. App. 576, 16 P.2d 188, 189.

It appears Mr. Blake was not employed to appear for Gaylord in the equity action until May or June, 1951, nearly two years after the estate was opened, at a time when much of his work was done. There can be no claim Blake represented any adverse interest until he was employed by Gaylord or after that

employment terminated. The decisions seem to hold Blake would at least be entitled to be paid for services rendered by him while not representing Gaylord. Moffett Bros. Partnership Estate v. Moffett, supra, 345 Mo. 741, 137 S.W.2d 507, 512; In re Schield's Estate, supra, Mo., 250 S.W.2d 151, 157, 158; In re Pfiffner's Guardianship, supra, Mo. App., 194 S.W.2d 233, 236–238. See also Beerly v. Wm. Meyer Co., 332 Ill. App. 653, 75 N.E.2d 783.

Of course Mr. Blake is not asking the estate to pay for anything he did for Gaylord in the equity action. It appears Gaylord has paid him nothing for his services in that action. Blake testified the reasonable value of his services for the estate was $5300, including about $50 expense. Mr. Leming, witness also for appellants, fixed such value at between $6000 and $7000. It is not contended the allowance to Blake is excessive if he is entitled to any compensation from the estate and if he did not agree to a fee of $200. We are not inclined to interfere with the allowance to him of $1500.

V. Finally, appellants say the court erred in not allowing Mark as executor $1500 rather than $500 which was allowed. The argument is based on an oral stipulation between counsel for appellants and appellee Elmer that the reasonable value of Mark's fees and expenses as executor be set at $1500 and charged as part of the costs. The court announced he would give consideration to the stipulation but did not feel bound by it—"the allowance of fees is for the court." The attorneys seem to have acquiesced in this announcement. At least the record shows no disagreement with it. It was also stipulated at the same time that the reasonable value of Elmer's services was $1175, as stated in Division IV hereof. Notwithstanding the stipulation the court found such value to be only $1000 and he allowed Elmer $750.

Mark's application for an allowance to himself states he made nine trips by automobile from his home in Oklahoma City to Hardin and Hamilton Counties to consult his attorneys and appear "at the trials." There was only one trial. Mark's first trip to Iowa was more than two months after the will contest had been dismissed. Mark claims mileage at seven cents a mile, expenses of $9 and compensation of $25 for each day he was away from

home "for the purposes aforesaid." Nine hundred forty-five dollars of Mark's claim is for mileage. We find no evidence in support of the claim. His counsel were apparently content to leave the amount of allowance for Mark to the court's discretion on the strength of the stipulation the court said he would consider.

It is true, as appellants argue, we have said the administrator or his attorney and the adult heirs or beneficiaries of an estate may agree upon the compensation of the administrator or attorney, where rights of creditors and perhaps of minors are not involved. Ordinarily the amount so agreed upon will be allowed. In re Estate of Hale, 231 Iowa 1018, 1025, 2 N.W.2d 775, 780, and citations. See also 34 C. J. S., Executors and Administrators, section 870; 21 Am. Jur., Executors and Administrators, section 527. Other authorities say the amount so agreed upon will be very influential in fixing the amount of compensation. In re Stewart's Estate, 145 Ore. 460, 28 P.2d 642, 91 A. L. R. 818, 826.

In the Hale case, supra, the executor agreed with the interested beneficiary to accept a certain fee which was allowed and accepted on the former's sworn applications. He later sought without success to recover a larger amount notwithstanding his executed agreement. The decision is based in part upon the conclusion the allowance was adequate as well as pursuant to agreement.

We are not disposed, by reason of the stipulation as to the value of Mark's fees and expenses, to increase the allowance to him for at least two reasons. First, counsel apparently acquiesced in the court's announcement he did not feel bound by the stipulation but would consider it. We need not discuss the effect that should ordinarily be given such a stipulation. Second, neither Gaylord nor anyone for him was a party to the stipulation nor bound by it. Consequently there was no amount agreed upon between Mark and all those beneficially interested in the estate. The above authorities are therefore not applicable.

We find no reversible error in any respect urged by appellants.—Affirmed.

All JUSTICES concur.